IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>KRZYSZTOF LEBIEDZIŃSKI | No. 20 CR 842<br><br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

The Government of the Republic of Poland seeks to extradite Krzysztof Lebiedziński, a citizen of Poland currently residing in the United States, for murder in violation of Article 148 § 1 of the Polish Criminal Code. According to the Polish authorities, Lebiedziński killed his aunt, Barbara Lebiedzińska, over twenty years ago in their hometown of Suraż, Poland.

In anticipation of his upcoming extradition hearing, Lebiedziński filed a Motion for Limited Discovery. [ECF No. 27]. Lebiedziński seeks ten categories of discovery purportedly in the possession of the Polish government, including information regarding DNA findings, Lebiedziński's location at the time of the murder, and any potentially exculpatory evidence. [ECF No. 27] at 5-7. Specifically, Lebiedziński asks the Court to compel the Polish authorities – presumably the Circuit Prosecutor's Office in Białystok or the National Prosecutor's Office in Cracow, though he does not specify – to produce the following:

1. A copy of all underlying data for all DNA testing conducted on any item of clothing found at the scene of the crime which allegedly contains Mr. Lebiedziński's DNA;[1]

2. A copy of research studies or any other scientific documentation supporting the conclusory statements made in the documents titled: "Further information to the request for pretrial

---

[1] Lebiedziński not only asks that Poland produce any and all underlying DNA data in the possession of the Polish authorities, but that they compile specific items – for example, a "table detailing the autosomal and Y STR results obtained for each of the items tested detailing loci tested and alleles detected that were relied upon" – so that "an expert Mr. Lebiedziński retained" may "evaluate" those conclusions. [ECF No. 27] at 5-6 n. 14.

    detention and extradition" dated January 20, 2021 (Exhibit B) and January 27, 2021 (Exhibit C) in which Mr. Krupinski makes the following unsupported statements:
- "it can be assumed that these underpants were last worn by man A, i.e. Krzysztof Lebiedzinski";
- "A comprehensive evaluation of all of the evidence examined, including the presence, quantity, and completeness of the DNA profile of Male A…indicates that the perpetrator who wore male underpants on the date Barbara Lebiedzinska was murdered and remained at the crime scene was Male A…";
- "the coincidental appearance of the profile of the other two men has no evidentiary significance…"; and,
- "the appearance of the profiles of the other two males on the elastic band of the underpants is not relevant to the case against Krzysztof Lebiedzinski, it may be accidental and be the effect of … dirty hands…."

3. A copy of any evidence or statement which reveals who the victim's blouse/nightgown was given to (family member of spouse of victim) when the investigation was closed in 2002 and who had returned the victim's blouse/nightgown to Polish authorities in or about 2019 for the purpose of conducting further DNA testing on the blouse.

4. A copy of any documents or photographs of the "underpants" found at the crime scene including information about the size of the underpants.

5. A copy of all statements of Kryztof Jankowski, including any statement he allegedly made stating he dropped Mr. Lebiedziński off at his family's goose farm between the hours of 1:00 and 2:20 a.m. on July 16, 2000, as well as any statements Mr. Jankowski allegedly made during the so-called "procedural experiment" referenced in Exhibit number 13 (*see* Dkt. 12, p. 128.).

6. A copy of any and all statements of any person who testified or stated that Mr. Lebiedziński arrived at his home at about 3:00 a.m. on July 16, 2000, including statements that may have been obtained as recently as January 2021 by Polish authorities.

7. A copy of the Polish police report relating to the police stop of Mr. Jankowski in the early morning of July 16, 2000, which police report would confirm the exact time Mr. Jankowski was stopped, thus placing him and his passengers, including Mr. Lebiedziński at a location which further confirms that it was not possible for Mr. Lebiedziński to have committed the crime.

8. Any evidence, statements or information relating to threatening phone calls made to the victim and/or reasons for such calls including whether the victim had promised anyone jobs in the United States.

9. Any and all statements involving other suspects including Piotr Litwinczuk and/or Antoni Dziemieniuk and whether any of them ever had a bloody shirt on the day of the crime.

10. Any and all fingerprints and/or hair samples found at the crime scene and reports including findings that one of the samples found matched Mr. Lebiedziński.

[ECF No. 27] at 5-7.

The Government opposes Lebiedziński's Motion for the above-described discovery on two grounds: first, that Lebiedziński does not cite any authority that would permit this Court to order a foreign country to produce discovery in an extradition proceeding, and second, that the type of discovery Lebiedziński seeks likely exceeds the permissible scope of discovery in an extradition case. [ECF No. 28]. The Court agrees with the Government on both points and, therefore, denies Lebiedziński's Motion for the reasons discussed below.

### I. The Court's Authority to Compel Discovery From Poland in an Extradition Proceeding

As a general matter, the process of extraditing a fugitive from the United States to Poland is governed by the provisions of the federal extradition statute, 18 U.S.C. §§ 3181 et seq., and the extradition treaty between the United States and Poland. U.S.-Pol., July 10, 1996, S. TREATY DOC. NO. 105-14 (1997); U.S.-Pol., June 9, 2006, S. TREATY DOC. NO. 109-14 (2006). The Federal Rules of Evidence and Federal Rules of Criminal Procedure do not apply to extradition proceedings, FED.R.EVID. 1101(d)(3), FED.R.CRIM.P. 54(b)(5), nor is there any express statutory basis in 18 U.S.C. §§ 3181 et. seq. for a court to order discovery. So, any authority to order the discovery Lebiedziński seeks here must arise from this Court's inherent power to do so "as law and justice require." *In re Mazur,* 2007 WL 839982, at *6 (N.D. Ill. 2007) (quoting *Oen Yin-Choy v. Robinson,* 858 F.2d 1400, 1407 (9th Cir. 1988)).

The Court's inherent power to order discovery in the extradition context is not limitless. It is not only discretionary, but also narrow in scope and circumscribed, in this Court's view, by the nature of the proceeding in which it has been sought. That is, this Court is currently exercising a

3

special authority delegated to the judiciary by Congress – the authority to decide whether to certify extraditability to the Secretary of State. *DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir. 1999); *Matter of Mackin,* 668 F.2d 122, 125 (2d Cir. 1981). Although the scope of the Court's power to order discovery in the extradition context is somewhat ambiguous, it follows that such power should be as limited as the Court's own role in the extradition process. Even the Government, represented by the United States Attorney's Office in this case, fulfills only a ministerial role in the extradition process by filing with the Court whatever has been sent to it by the Polish government. [ECF No. 28] at 3 n. 3 ("The government in this case has not investigated the July 2000 murder. It has merely fulfilled MLAs on Poland's behalf and sought clarifications from Poland regarding its extradition request.").

So, in this context, the Court strains to see how it would have the authority or, if it has the authority, why it should choose to exercise it here to compel production of the breadth of information and documents located in Poland that Lebiedziński is seeking. Several courts that have confronted the issue head-on are in accord. *In re Extradition of Handanovic,* 826 F. Supp. 2d 1237, 1241 (D. Or. 2011) ("the United States does not have any obligation or authority to obtain exculpatory discovery on the defendant's behalf, and any dispute over discovery of items in the possession of the country requesting extradition must be pursued in that country"); *In re Extradition of Zhenly Ye Gon*, 613 F. Supp. 2d 92, 101–02 (D.D.C. 2009) ("In any event, the right to discovery could at most extend to the United States itself just as the obligation to produce exculpatory evidence extends only to the United States, not the demanding state."); *In re Extradition of Drayer*, 190 F.3d 410, 414–15 (6th Cir. 1999). Even the United States Supreme Court has recognized that an international fugitive may not "compel the demanding government to produce all its evidence here, both direct and rebutting, in order to meet the defense thus

4

gathered from every quarter." *Collins v. Loisel*, 259 U.S. 309, 316 (1922) (citation omitted). And the main case on which Lebiedziński relies in support of his Motion, *In re Mazur,* only allowed discovery requests to be served upon domestic, not international, entities. 2007 WL 839982 (allowing limited subpoenas to be served on "individuals who are presently in the United States," including a State Department official and a United States police official).

Along with *In re Mazur*, Lebiedziński cites cases in which courts discuss their inherent authority to order discovery in extradition proceedings, but none directly tackle the issue of a court's authority to compel a foreign entity to comply with discovery requests in a proceeding such as this. And it is telling that very few of the cases Lebiedziński cites ultimately grant the accused's motion for discovery. [ECF No. 27] at 8-9; *see, e.g., Oen Yin-Choy,* 858 F.2d 1400 (concluding that the district court did not abuse its discretion in denying the discovery motion, given the limited nature of the proceedings); *Quinn v. Robinson*, 783 F.2d 776, 817 (9th Cir. 1986) (specifically making no finding as to whether the district judge erred in refusing to grant discovery, where more complicated issues involving the statute of limitations on a conspiracy charge were yet unresolved); *Koskotas v. Roche,* 931 F.2d 169 (1st Cir. 1991) (affirming a judge's authority to order narrow discovery but finding no abuse of discretion in the district court's decision to deny discovery altogether); *In re Extradition of Sandhu,* 886 F. Supp. 318 (S.D.N.Y. 1993) (noting that although there is sometimes a path to limited discovery in extradition proceedings, no discovery was warranted due to the volume of evidence already available and the limited nature of an extradition proceeding). The narrow scope of the Court's authority to order discovery from a foreign country in an extradition case thus cannot be overstated.

Lebiedziński cites only two cases where a foreign government or entity appeared to produce discovery in an extradition case. Neither case supports the notion that the Court should

5

permit the broad discovery requests that Lebiedziński wants the Court to authorize here. In *United States v. Montemayor Seguy*, 329 F. Supp. 2d 871 (S.D. Tex. 2004), the court noted as part of its ruling on extradition that "extensive production of documents" had occurred over the last six months and that this discovery had been "especially generous when one considers the preliminary nature of this proceeding." *Id.* at 879. Although the court ultimately found the documents were not relevant to the issue of extradition, Mexico did in fact provide discovery related to "whether the prosecutor in Mexico [was] factually and legally correct in his positions before the court there." *Id.* But it is not at all clear based on the court's ruling whether those documents were produced by agreement of the parties and Mexico, pursuant to court order, or as part of a separate diplomatic process[2] – making it almost impossible for this Court to extrapolate from this *Montemayor Seguy* case how, as a practical matter, Lebiedziński suggests this Court could secure the voluminous and complicated discovery he seeks from Poland in this case.

Similarly, Lebiedziński urges this Court to follow in the footsteps of the lower court in *Matter of the Extradition of Kraiselburd,* 786 F.2d 1395, 1399 (9th Cir. 1986). In that case, Argentina sought to extradite the accused, Jorge Gustavo Kraiselburd, from the United States for murder. *Id.* at 1396. As part of the extradition process, the lower court denied a blanket discovery motion for the Argentinian prosecutor's entire investigatory file, instead ordering that Argentina produce limited documents relevant to the issue of probable cause. *Id*. at 1399. After discovery was produced and an extradition hearing held, the magistrate judge issued an order certifying

---

[2] The treaty between Mexico and the United States – unlike that with Poland – contains a diplomatic mechanism by which the United States may request additional evidence that may be necessary to a showing of probable cause. Article 12 of the 1978 Treaty between the United States and Mexico anticipates that there may be cases where the executive of the requested country "considers that the evidence furnished in support of the request for extradition is not sufficient to fulfill the requirements of [the] Treaty," and provides that in such cases, the requested country "shall request the presentation of the necessary evidence." 1978 Treaty, art. 12.

6

Kraiselburd's extraditability. *Id.* at 1396. Kraiselburd then filed a petition for habeas corpus alleging, in part, that the lower court erred by not giving him all the discovery he sought. In that context, the Ninth Circuit concluded that the magistrate judge "properly limited discovery" by circumscribing the breath of discoverable information. *Id.* at 1399. But the Ninth Circuit never reached the issue of whether the magistrate judge had the authority in the first instance to order that Argentina produce documents responsive to a discovery request, as the parties neither raised nor briefed the issue. And the Court is not inclined to infer from the Ninth Circuit's silence on the issue that the broad discovery Lebiedziński seeks from Poland is within the bounds of this Court's limited, albeit inherent, authority to order discovery here.

Here, there is only one entity in the United States to whom the Court could reasonably direct Lebiedziński's discovery requests: the United States Attorney's Office. And that Office has represented that neither it nor any other federal agency in the United States has the information Lebiedziński seeks. As one court faced with a similar dilemma aptly stated, "Nemo dat quod non habeat; it cannot give what it does not have." *Zhenly Ye Gon*, 613 F. Supp. 2d at 102. In short, the Court can find no authority – and Lebiedziński cites none – that would authorize the kind of broad discovery he is seeking from Poland in this extradition proceeding. That is sufficient reason to deny Lebiedziński's Motion at this juncture.

      II.     **Admissible Evidence in an Extradition Proceeding**

Even were this Court to conclude that the discovery Lebiedziński seeks from Poland is not out of reach, the Court questions whether the discovery he is asking the Court to allow would appreciably advance his ultimate goal in this extradition proceeding, which is to negate or explain away the Government's proffered showing of probable cause. *Quinn*, 783 F.2d at 817 n. 41. "In exercising its discretion to grant or deny discovery, an extradition court should consider that

7

'extradition proceedings are not to be converted into a dress rehearsal for trial' and 'whether the resolution of the contested issue would be appreciably advanced by the requested discovery.'" *Oen Yin-Choy,* 858 F.2d at 1407 (quoting *Emami v. U.S. Dist. Ct. for N. Dist. of California,* 834 F.2d 1444, 1452 (9th Cir. 1987)).

As to the first consideration identified in *Oen Yin-Choy* – that an extradition proceeding in this country is not a rehearsal for trial in the requesting country – it is well-established that courts have a limited role in the extradition process. *Austin v. Healey*, 5 F.3d 598, 600 (2d Cir.1993), cert. denied, 510 U.S. 1165 (1994) ("Extradition is primarily a function of the executive branch, and the judiciary has no greater role than that mandated by the Constitution, or granted to the judiciary by Congress."); *see also, In re Extradition of Burt*, 737 F.2d 1477, 1487 (7th Cir. 1984) (courts "must move with the circumspection appropriate when…adjudicating issues inevitably entangled in the conduct of our international relations"). The purpose of an extradition hearing is not to adjudicate the guilt or innocence of the accused, but rather, to determine only whether the elements the Government must show under 18 U.S.C. § 3184 have been met and ultimately to decide whether to certify extradition to the Secretary of State. The accused should "not be tried in the United States for crimes he is alleged to have committed in the requesting country," nor does the extradition framework contemplate "the right of the accused to have a plenary hearing and trial in the United States" or the right to "compel the demanding government to produce all of its evidence on American soil, subjecting them not only to the difficulties of an unfamiliar system but also the demands of transporting physical evidence and witnesses." *In re Extradition of Jarosz,* 800 F. Supp. 2d 935, 940 (N.D. Ill. 2011) (citing *Collins,* 259 U.S. at 316); *see also, Emami,* 834 F.2d at 1452 (concluding it was not an abuse of discretion for the magistrate judge to deny discovery where the discovery was of the type that would only be appropriate at a trial on the merits and

8

"entertaining such arguments would inevitably have involved the magistrate in questions of German law" and "considerations of international comity and competence make it advisable to avoid such questions.")). In ruling on this Motion, therefore, the Court is "mindful always of [its] limited role in extradition cases and the potential harm that may result to international relations from reflexive attempts to superimpose United States' rules of evidence on extradition hearings." *Jarosz,* 800 F. Supp. 2d at 942.

Turning to the second issue identified in *Oen Yin-Choy* – whether resolution of the contested issue would be appreciably advanced by the requested discovery – Lebiedziński initially sought discovery for two reasons. First, he wanted to use this evidence to show that he has a "high probability of success on the merits" such that the Court would find "special circumstances" exist and grant him bail pending a formal extradition hearing. *See, e.g., Matter of Extradition of Rouvier,* 839 F. Supp. 537, 539 (N.D. Ill. 1993) (citing *Salerno v. United States*, 878 F.2d 317, 319 (9th Cir. 1989)). Second, he wanted the evidence to use at his eventual extradition hearing. *See, e.g., In re Rodriguez Ortiz*, 444 F. Supp. 2d 876, 884 (N.D. Ill. 2006). At the hearing on the instant Motion, however, Lebiedziński withdrew his request for bail. He is now focused solely on the upcoming extradition proceeding. So, the only contested issue to which the discovery he is seeking now might be relevant is to negate or explain away the showing of probable cause that must be made at the extradition hearing if Lebiedziński is to be returned to Poland.[3]

---

[3] Under 18 U.S.C. § 3184, a request for extradition will be granted if the following findings are made: (1) The judicial officer has jurisdiction to conduct an extradition proceeding; (2) The Court has jurisdiction over the fugitive; (3) The person before the Court is the fugitive named in the request for extradition; (4) There is an extradition treaty in full force and effect; (5) The crimes for which surrender is requested are covered by that treaty; and (6) There is *competent legal evidence to support the finding of probable cause* as to each charge for which extradition is sought. *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) (emphasis added).

Lebiedziński describes his discovery requests as "narrowly tailored to seek information that would clarify and/or explain the underlying evidence that forms the basis of the allegations made in the extradition package." [ECF No. 27] at 9. Presumably, he has done so because evidence that "explains away or completely obliterates probable cause" is admissible at an extradition hearing, while evidence that "merely controverts the existence of probable cause" is not. *Lindstrom v. Gilkey*, 1999 WL 342320, at *5 (N.D. Ill. 1999) (citations omitted). Courts acknowledge that the difference between "explanatory" and "contradictory" evidence is not well-defined or even easy to apply. *Noeller v. Wojdylo*, 922 F.3d 797, 804 (7th Cir. 2019); *see, e.g., Hoxha v. Levi,* 465 F.3d 554, 561 (3d Cir. 2006) ("In practice," the line between contradictory and explanatory evidence "is not easily drawn"); *In re Extradition of Strunk*, 293 F. Supp. 2d 1117, 1122 (E.D. Cal. 2003) ("The distinction between evidence which 'explains' and evidence which 'contradicts' seems metaphysical."). The "purpose of the contradictory/explanatory distinction is two-fold: to afford an accused person the opportunity to present reasonable clear-cut proof which would be of limited scope and have some reasonable chance of negating a showing of probable cause while preventing the accused person from turn[ing] the extradition hearing into a full trial on the merits." *Lindstrom*, 1999 WL 342320, at *5 (quoting *In re Extradition of Sindona*, 450 F.Supp. 672, 685 (S.D.N.Y. 1978) (internal quotations omitted)).

As discussed above, an extradition hearing is not a trial, but instead bears some similarity to a preliminary hearing in a criminal case in the United States, as it is ultimately a question of whether there is competent evidence to support the finding of probable cause as to the charge for which extradition is sought. Although Lebiedziński describes his discovery requests as limited to the purpose for which evidence is admissible at an extradition hearing, the Government argues, and the Court's own research shows, that the information he is seeking instead may fall into one

or more categories of evidence that courts consistently have held should not be considered during the extradition process: attacking the credibility[4] of witnesses whose statements form the basis of the Government's extradition complaint (Requests 5, 6, and 8), credibility attacks on the Polish prosecutor[5] (Requests 2 and 8), presenting alibi[6] evidence (Requests 5, 6, 7, and 9), attempting to directly contradict[7] Poland's DNA or other forensic conclusions (Requests 1, 3, and 10), or presenting evidence that goes to guilt or innocence[8] (Requests 1, 4, 10).

Whether Poland has made the requisite showing to support its extradition request remains to be seen. But at least as presented in Lebiedziński's Motion, there is a substantial question whether the discovery Lebiedziński wants this Court to order Poland to provide is designed to yield evidence to negate or explain away probable cause, or rather, is directed at the ultimate question of whether Lebiedziński is guilty of the crime he is accused of committing in Poland. That latter question is not for this Court to decide, for "what is at issue in the proceeding...is not punishability but *prosecutability*." *Noeller,* 922 F.3d at 804 (quoting *Skaftouros v. United States*, 667 F.3d 144, 155 (2d Cir. 2011)) (emphasis in original). Poland "is not required to present its

---

[4] *See, e.g., Eain v. Wilkes,* 641 F.2d 504, 511 (7th Cir.), cert. denied, 454 U.S. 894 (1981) (an accused has no right to "pose questions of credibility as in an ordinary trial"); *Esposito v. Adams*, 700 F. Supp. 1470, 1477 (N.D. Ill. 1988) (declining to consider evidence that went to the credibility and motives of the witnesses against the individual facing extradition, consistent with the Seventh Circuit's guidance in *Eain*).

[5] *See, e.g., Jarosz,* 800 F. Supp. 2d at 948 (rejecting extraditee's credibility attacks on Polish prosecutor's affidavit because there were inconsistencies).

[6] *See, e.g., Matter of Extradition of Noeller*, 2018 WL 1027513, at *7 (N.D. Ill. 2018) ("Evidence of alibi or of facts contradicting the demanding country's proof or of a defense are to be excluded from the hearing."); *Shapiro v. Ferrandina,* 478 F.2d 894, 901 (2nd Cir. 1973) (evidence of an alibi defense may not be raised at an extradition hearing).

[7] *See, e.g., Charlton*, 229 U.S. at 461 ("To have witnesses produced to contradict the testimony for the prosecution is obviously a very different thing from hearing witnesses for the purpose of explaining matters referred to by the witnesses for the government."); *see also, Noeller*, 922 F.3d at 804.

[8] *See, e.g., Noeller* 2018 WL 1027513, at *3 ("The question of guilt or innocence is not for this court in an extradition proceeding.").

entire case in this country[,]" but rather, "[t]he evidence presented need only 'support a reasonable belief that [Lebiedziński] was guilty of the crime charged.'" *Austin,* 5 F.3d at 605 (internal citations and quotations omitted); *see also, Emami*, 834 F.2d at 1452 ("the relevant determination is confined to whether a prima facie case of guilt exists that is sufficient to make it proper to hold the extraditee for trial."). As the Court noted above, the line between evidence that negates or explains away probable cause and evidence that is designed to rebut the prosecution's evidence is not clear or easily drawn. But just as the Court "is obliged to resist any temptation to judge the guilt or innocence of the accused" in an extradition proceeding, so too should the parties constrain their arguments and evidence to issues that are properly before the Court. *Noeller,* 922 F.3d at 803–04.

The Court recognizes, of course, that it has not yet been formally presented with the evidence Lebiedziński will offer at the extradition hearing now set for May 20, 2021. Lebiedziński's counsel represented during the hearing on his Motion that he is trying, through other channels, to obtain from Poland some of the information he is seeking in the Motion now before the Court. Nothing in this opinion should be read as foreclosing the admissibility of any such evidence. The Court will evaluate any arguments and evidence Lebiedziński brings forth consistent with the case law and principles discussed in this opinion and whatever additional authority the parties may bring to the Court's attention. The Court's decision today extends only to whether the discovery Lebiedziński is asking the Court to allow him to obtain from Poland through formal discovery processes is proper and within the scope of the Court's authority in an extradition proceeding. On that question, the Court holds that the volume and breadth of the material Lebiedziński is seeking, coupled with the Court's concern about whether that evidence even will be admissible on the contested issues at the extradition hearing, weighs against the Court exercising whatever discretion it may have to authorize that discovery at this time.

### III. Conclusion

Accordingly, for all the reasons discussed above, Lebiedziński's Motion for Limited Discovery [ECF No. 27] is denied.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: March 10, 2021